UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CARLOS G. CRUZ,

        Plaintiff,

    v.

NANCY A. BERRYHILL,

        Defendant.

Case No. 16-cv-05910-PJH

**ORDER RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 17, 22

Plaintiff Carlos Cruz ("Cruz") seeks judicial review of the Commissioner of Social Security's (the "Commissioner") final decision denying Cruz's claim for disability benefits pursuant to 42 U.S.C. § 405(g). This action is before the court on the parties' cross-motions for summary judgment. Having read the parties' papers and administrative record, and having carefully considered their arguments and relevant legal authority, the court GRANTS in part and DENIES in part plaintiff's motion for summary judgment, and DENIES defendant's cross-motion for summary judgment. The matter is REMANDED for further proceedings consistent with this opinion.

## BACKGROUND

Cruz was approximately fifty-two years old when he filed the disability benefits application giving rise to this appeal. Certified Administrative Record ("AR") 14, 29. Cruz has a high school education and has previously worked as a construction worker, carpet installer, and part-time caregiver. AR 29, 60-61, 666.

In Cruz's initial application for Social Security disability insurance, filed on October 30, 2012, Cruz alleged a disability onset date ("AOD") of August 12, 2008. AR 14, 143.

In that application, Cruz alleged disability based primarily on pain in his right shoulder, left hamstring, hip, neck, and back. AR 143-44. In addition to these ailments, Cruz also complained of arthritis, gastroesophageal reflux disease, obesity, and other pain. AR 143-44. The Commissioner denied Cruz's application both initially and again upon reconsideration on July 24, 2013 and March 25, 2014, respectively. AR 14. Cruz subsequently requested a hearing before an administrative law judge (the "ALJ"), which took place on March 17, 2015. AR 14.

At that March 17, 2015 hearing, through his non-attorney representative, Seth DeSimone, Cruz amended his AOD from August 12, 2008 to July 1, 2011.[1] AR 42. Cruz testified at the hearing and answered questions from DeSimone, the ALJ, and vocational expert Malcom Brodzinsky (the "VE"). AR 45-63. The VE also testified as an impartial expert at the hearing and answered questions posed by the ALJ and DeSimone. AR 64-70.

On June 18, 2015, the ALJ issued a sixteen page decision finding Cruz not disabled under the Social Security Act (the "SSA" or the "Act"). AR 14-30. The ALJ found that Cruz maintained residual functional capacity ("RFC") sufficient to perform "light work" subject to certain limitations but was unable to perform any past relevant work. AR 21, 28.

When Cruz's subsequent request for review was denied by the Appeals Council (the "Council") on September 16, 2016, the ALJ's June 18, 2015 decision became the Commissioner's final decision. AR 3-9.

The instant appeal followed.

## STATUTORY AND REGULATORY FRAMEWORK

### A. Sequential Analysis

The Social Security Act provides for the payment of disability insurance benefits to people who have contributed to the social security system and who suffer from a physical

---

[1] As discussed more fully below, the relevant AOD is disputed.

or mental disability.  See 42 U.S.C. § 423(a)(1).  To evaluate whether a claimant is disabled within the meaning of the Act, the ALJ is required to use a five-step analysis. See 20 C.F.R. § 416.920(a).  The ALJ may terminate the analysis at any step when it is determined that the claimant is or is not disabled.  Pitzer v. Sullivan, 908 F.2d 502, 504 (9th Cir. 1990).

At step one, the ALJ determines whether the claimant has engaged in any "substantial gainful activity," which would automatically preclude the claimant receiving disability benefits.  See 20 C.F.R. § 416.920(b).  If not, at the second step, the ALJ must consider whether the claimant suffers from a severe impairment which "significantly limits [the claimant's] physical or mental ability to do basic work activities."  See 20 C.F.R. § 416.920(c).  The third step requires the ALJ to compare the claimant's impairment(s) to a listing of impairments in the regulations.  If the claimant's impairment or combination of impairments meets or equals the severity of any medical condition contained in the listing, the claimant is presumed disabled and should be awarded benefits.  See 20 C.F.R. § 416.920(d).

If the claimant's condition does not meet or equal a listing, the ALJ must proceed to the fourth step to consider whether the claimant has sufficient residual functional capacity to perform his past work despite the limitations caused by the impairment(s). See 20 C.F.R. § 416.920(e)-(f).  An individual's RFC is what he can still do in a workplace setting despite his physical and mental limitations.  20 C.F.R. § 404.1545.  In determining the RFC, the ALJ must consider all of the claimant's impairments, including those that are not severe, taking into account all relevant medical and other evidence.  20 C.F.R. §§ 416.920(e), 416.945.  If the claimant cannot perform his past work, the Commissioner is required to determine, at step five, if the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  See 20 C.F.R. § 404.1520(g).

In steps one through four, the claimant has the burden to demonstrate a severe

impairment and an inability to engage in his previous occupation.  <u>Andrews v. Shalala</u>, 53

F.3d 1035, 1040 (9th Cir. 1995).  If the analysis proceeds to step five, the burden shifts to

the Commissioner to demonstrate that the claimant can perform other work.  <u>Id.</u>

**B.    Standard of Review**

This court has jurisdiction to review final decisions of the Commissioner pursuant

to 42 U.S.C. § 405(g).  The ALJ's decision must be affirmed if the ALJ's findings are

"supported by substantial evidence and if the [ALJ] applied the correct legal standards."

<u>Holohan v. Massanari</u>, 246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted); <u>See</u> 42

U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if

supported by substantial evidence, shall be conclusive").  " 'Substantial evidence' means

more than a scintilla, but less than a preponderance."  <u>Smolen v. Chater</u>, 80 F.3d 1273,

1279 (9th Cir. 1996) (quotations and citations omitted); <u>Valentine v. Comm'r of Soc. Sec.</u>

<u>Admin.</u>, 574 F.3d 685, 690 (9th Cir. 2009).  "Substantial evidence is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."

<u>Webb v. Barnhart</u>, 433 F.3d 683, 686 (9th Cir. 2005); <u>Smolen</u>, 80 F.3d at 1279.  If the

evidence is subject to more than one rational interpretation, the court must uphold the

ALJ's findings if they are "supported by inferences reasonably drawn from the record."

<u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1038 (9th Cir. 2008); <u>see also</u> <u>Burch v. Barnhart</u>,

400 F.3d 676, 679 (9th Cir. 2005).  Yet the reviewing court "must consider the entire

record as a whole, weighing both the evidence that supports and the evidence that

detracts from the Commissioner's conclusion, and may not affirm simply by isolating a

specific quantum of supporting evidence."  <u>Revels v. Berryhill</u>, 874 F.3d 648, 654 (9th Cir.

2017).

The ALJ, like the reviewing court, faces limits when making credibility

determinations.  With regards to a claimant's testimony, the claimant must first present

objective medical evidence of an underlying impairment "which could reasonably be

expected to produce the pain or other symptoms alleged."  <u>Lingenfelter v. Astrue</u>, 504

United States District Court
Northern District of California

F.3d 1028, 1035-36, (9th Cir. 2007).  After the claimant has done so and if "there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."  Id. at 1036 (internal quotation marks omitted); see also Revels, 874 F.3d at 655.  The ALJ need only provide germane reasons to reject third-party reports.  Revels, 874 F.3d at 655.

"When presented with conflicting medical opinions, the ALJ must determine credibility and resolve the conflict."  Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004).  "To reject the uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence."  Revels, 874 F.3d at 654-55.  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."  Id.  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his [or her] interpretation thereof, and making findings."  Id.

Additionally, the harmless-error rule applies where substantial evidence otherwise supports the ALJ's decision.  See Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir. 1991).

## THE ALJ'S FINDINGS

The ALJ findings were based on Cruz's medical record, the hearing testimony, and the testimony and medical opinions of ten individuals, ranging from Cruz's roommate to medical practitioners.  Other than Cruz's own testimony, the testimony and medical opinions most relevant to the present appeal were provided by:

- Dr. Mary Gable, who performed a complete internal medicine evaluation on May 10, 2013.
- Doctors B. Sheehy and Jonathan F. Nordlicht, who were the initial and reconsideration level state agency medical consultants, respectively.  Their examinations occurred on May 28, 2013 and March 20, 2014, respectively.  Neither examined Cruz personally.
- Dr. Robert Gardner, who works at Lucerne Community Clinic, Cruz's primary

clinic. Dr. Gardner examined Cruz once on February 11, 2014, for the sole purpose of providing his medical source statement. AR 27.

- Nurse practitioner Lynn Brookes, who is Cruz's primary treatment provider at Lucerne Community Clinic. AR 24. Brookes did not provide a medical source statement, but her treatment notes are dispersed throughout the medical record.
- Dr. Les Kalman, who is a psychological consultative examiner. On July 9, 2013, Dr. Kalman performed a psychiatric evaluation on Cruz.

## A. The ALJ's Analysis

The ALJ found Cruz not disabled, concluding that Cruz could still perform jobs within the national economy. AR 30. At step one, the ALJ determined Cruz had not engaged in "substantial gainful activity" since his onset date of July 1, 2011. AR 16. At step two, the ALJ found Cruz suffered from a host of severe impairments, including right shoulder degenerative joint disease, degenerative spinal disease, arthritis, joint disease of the hip, a left hamstring injury, major depression disorder/adjustment disorder, gastroesophageal reflux disease (GERD), and obesity. AR 16-17. The ALJ also found that Cruz's calcification of the right knee was a non-severe impairment and that Cruz's alleged insomnia was non-medically determinable. AR 17. At step three, the ALJ concluded that these impairments individually or in combination failed to meet the criteria or severity of any section of the listing of impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 17-21. The ALJ therefore found that Cruz's disability claim could not be established on the medical facts alone. AR 17-21.

Having found that Cruz did not suffer from a listed impairment, the ALJ determined Cruz's RFC. To determine Cruz's RFC, the ALJ applied a two-step process that considered all symptoms regardless of severity. AR 21. At step one, the ALJ determined whether there was an underlying medically determinable physical or mental impairment that could reasonably be expected to produce Cruz's pain or other symptoms. AR 21. At step two, the ALJ evaluated the intensity, persistence and limiting effects of Cruz's symptoms to determine the extent to which they limited his functioning. AR 21. When Cruz's reported symptoms did not match the objective medical evidence, the ALJ made a credibility determination based on the entire medical record. AR 21.

Cruz alleged that his impairments and symptoms prevented him from, amongst other things, (i) "moving his right arm without unbearable pain," (ii) "lifting anything or carrying more than ten pounds", (iii) performing many activities of daily living, (iv) sleeping at night (causing tiredness during the day), and (v) walking distances longer than ten minutes without his back and left hamstring hurting significantly. AR 22.

In conducting the two-step process, the ALJ first concluded that Cruz's medically determinable impairments could reasonably be expected to cause the alleged symptoms. AR 22. In the second step, the ALJ concluded that Cruz's statements about the severity of the symptoms were neither credible nor supported by the medical record. AR 22.

The ALJ concluded that Cruz's RFC allowed him to perform "light work" subject to the following limitations:

> The claimant can reach overhead with his right upper extremity frequently, and he can carry with is right upper extremity frequently. The claimant cannot climb ladders, robes, or scaffolds. The claimant can occasionally stoop/kneel/crouch/crawl. The claimant can occasionally walk on uneven terrain. The claimant can occasionally engage in prolonged ambulation. The claimant must avoid concentrated exposure to cold. The claimant can occasionally interact with supervisors, coworkers, and the public. The claimant can stand/walk for 4 hours in an 8-hour day, and would need to alternate positions approximately every 30 minutes. The claimant can perform bilateral grasping frequently. The claimant requires a cane when walking on uneven terrain, and when ambulating for prolonged periods.

AR 21.

The ALJ determined, at step four, that Cruz's RFC prevented him from performing any of his past relevant work. AR 28.

Proceeding to step five, based on the VE's testimony, the ALJ determined that jobs existed in significant numbers in the national economy that Cruz could perform. AR 29-30. Specifically, based on the VE's testimony, the ALJ determined that Cruz's RFC did not prevent him from working as a "bench assembler" or "mail clerk" as described in the Dictionary of Occupational Titles ("DOT").[2] AR 29. The ALJ therefore determined

---

[2] The DOT describes the physical and mental capabilities required to perform the

that Cruz was not eligible for disability benefits under the Social Security Act.  AR 30.

**B.     Cruz's Relevant Impairments**

**Right Shoulder.**  The RFC limited Cruz to "frequent" right overhead reaching and carrying.  AR 21.  The ALJ considered the following parts of Cruz's objective medical history:  Cruz's complaints of pain in his right shoulder (AR 726, 730, 745), a 2008 MRI showing complete tears in two tendons (AR 531), an April 2009 rotator cuff surgery (AR 524), an examination in September 2009 showing limited abduction and external rotation (AR 518), a July 1, 2011 MRI showing a complete tendon tear in Cruz's right shoulder (AR 721), imaging taken in August 26, 2014 showing mild narrowing and mild-moderate spurring of two joints (AR 697), and the reviewing physician's finding of mild degenerative joint disease in Cruz's shoulder (AR 697).[3]  The ALJ concluded that "the evidence does suggest that [Cruz] has some shoulder related limitations."  AR 23.

The ALJ, however, also found there was "some reason to doubt that [the] condition is as disabling as [Cruz] alleges."  AR 23.  The ALJ pointed to Dr. Gable's opinion that Cruz "seems to demonstrate better range of motion when he is not being tested" and that though Cruz "has substantially decreased range of motion in his shoulder on testing," it is "less so when looking at him functionally in the room."  AR 23.  In addition, the ALJ noted that during the hearing she observed Cruz "wearing a sling to support his right arm, while simultaneously gesturing with both arms and moving about excitedly."  AR 22.

**Left Hip**.  Cruz testified to experiencing hip pain and the medical records show that he experiences limited hip flexibility and tightness, and pelvic obliquity.  AR 23, 654, 656.  The record also shows Cruz has an antalgic gait favoring his left side.  AR 23, 662, 665.  On the other hand, Cruz's left hip strength was 4+/5 and imaging study results in July 2013 and April 2014 showed "normal" and "minor degenerative changes,"

---

described occupation at a satisfactory level.  <u>Zavalin v. Colvin</u>, 778 F.3d 842, 846 (9th Cir. 2015).

[3] A September 2014 x-ray shows that 1 of the 3 screws from Cruz's rotator cuff repair had become dislodged.  AR 765.  It does not appear that the ALJ considered this x-ray.

respectively. AR 23, 661, 674, 702. The ALJ also noted that Cruz's left hip treatment regime was conservative. AR 23.

**Neck**. Cruz's medical record is replete with complaints of neck pain. See, e.g., AR 683, 733. These complaints are confirmed by a September 6, 2013 MRI showing impairments in multiple discs. AR 23, 652. On the other hand, the physical consultative examination showed Cruz's range of motion was within normal limits (AR 660), that there was no evidence of weakness in his upper extremities (AR 661), and no evidence of neck surgery.

**Lower Back and Left Hamstring.** The ALJ found that the medical evidence supported the existence of lower back and left hamstring impairments, but "it is likely that [Cruz] overstates the severity of his related symptoms." AR 23. The record contains multiple complaints of back pain. See, e.g., AR 733, 739. And imaging performed on June 28, 2012 and April 3, 2014 indicated "mild degenerative/disc changes," "minor disc narrowing," and moderate facet sclerosis. AR 23, 699, 719. In April 2014, the reviewing physician concluded that Cruz experienced mild degenerative changes similar to those found by the June 2012 imaging study. AR 699. The consultative examiner also found some decreased range of motion in Cruz's back. AR 23.

Cruz also experienced a hamstring injury in 2002 that has been variously described as a tear or strain. AR 24, 465 ("left hamstrings [sic] tear"), 662 ("sounds like a strain"). Dr. Gardner opined that Cruz had chronic pain and sciatica in his left leg. AR 24, 683. This is somewhat corroborated by the frequent citation by Cruz's physical therapist to reports of pain. AR 654.

On the other hand, there was no relevant tenderness or radiculopathy, straight leg raising was negative,[4] sensory examination was normal, deep tendon reflexes were

---

[4] The Straight Leg Raise test is a neural tension test that can be used to rule in or out neural tissue involvement as a result of a space occupying lesion, often a lumbar disc herniation. See Dutton, M., Orthopaedic: Examination, evaluation, and intervention (2nd ed. 2008), New York: The McGraw-Hill Companies, Inc.

intact, and there was no evidence of back surgery.  AR 23, 661.  In discounting the left

hamstring injury, the ALJ also pointed to Dr. Gable's May 2013 medical opinion that

associated symptoms should have already resolved.  AR 24, 662.  Dr. Gable also opined

that Cruz's lower back pain was largely musculoskeletal in origin, which was exacerbated

by Cruz's weight.  AR 662.  Nurse practitioner Brookes concurred with the latter

assessment.  AR 751.

**Social/Mental.**  To account for Cruz's social and psychological impairments,

Cruz's RFC limited Cruz to "occasional" interactions with supervisors, coworkers, and the

public.  AR 24.  This limitation was based on Dr. Kalman's diagnosis that Cruz

experienced both major depression and adjustment disorder.  AR 668.

The ALJ, however, also found that there was evidence suggesting the impairment

was not as disabling as Cruz asserted.  AR 24.  Although Cruz testified that he could not

do much in terms of activities of daily living, he also testified that he did his own laundry,

cleaning and grocery shopping.  AR 24-25.  His roommate, Joseph Ruddock, according

to the ALJ, confirmed this account.  AR 28, 330, 344.  Dr. Kalman concurred, opining that

Cruz could "manage his own transportation, bills, and personal hygiene" and that Cruz

displayed "normal thought process."  AR 667.  And though Cruz stated he "stay[ed] to

himself" and was a "loner," AR 667, his roommate testified Cruz did not have trouble

getting along with others.  AR 347.

Dr. Kalman also opined that Cruz could understand, remember, and carry out

simple one and two-step job instructions; could maintain attention, concentration and

memory; and could withstand the stress and pressures associated with daily work

activities.  AR 666-67.  The ALJ did not discuss this part of Dr. Kalman's opinion.

**Obesity.**  The ALJ found that Cruz's obesity was a "severe" impairment.  AR 16-

17.  The ALJ considered and incorporated Cruz's obesity throughout her findings.  AR 25.

**C.     The ALJ's Weighting of the Medical Opinions and Testimony**

As noted, the ALJ considered and weighed the testimony and opinions of ten

United States District Court
Northern District of California

people.  While many of these are discussed below, Cruz's testimony and the medical

opinions of Dr. Gable and Dr. Gardner merit a more a detailed discussion.

**Cruz.**  As described above, Cruz claims that his impairments generate disabling

symptoms.  AR 22.

The ALJ found Cruz's statements concerning the intensity, persistence and limiting

effect of his symptoms to be "not entirely credible."  AR 22.  First, the ALJ found that

Cruz's "activities of daily living evidence a good deal of remaining function."  AR 22.  Dr.

Kalman's opinion about Cruz's capabilities provides some support for that conclusion.

AR 667.

Second, the ALJ determined that Cruz's credibility was "undercut by evidence

suggesting attempts to coerce" his physicians into providing diagnoses that would be

favorable to a disability determination.  AR 22.  Specifically, the ALJ pointed to:

- Nurse practitioner Brookes's statement that "pt attempts to intimidate at every opportunity.  He often mentions his lawyer and all that is owed to him and how he has been treated poorly."  AR 22, 750.
- The ALJ's observation that during the hearing Cruz wore "a sling to support his right arm, while simultaneously gesturing with both arms and moving about excitedly."  AR 22.
- Dr. Gable's statement that Cruz says that "he can barely do anything with this right shoulder . . . Yet, he seems to demonstrate better range of motion when he is not being tested."  AR 23, 660-61.  Dr. Gable also reported that Cruz "has substantially decreased range of motion in his shoulder on testing" but "less so when looking at him functionally in the room."  AR 23, 662.

Albeit not specifically relied on by the ALJ, the court finds that there are other

indications in the record that Cruz's impairments are less disabling than he attempts to let

on.  When Cruz switched doctors in December 2013 to Lucerne Community Clinic (his

current clinic) nurse practitioner Brookes wrote that Cruz was "now changing to us to get

help to get on ss Disability."  AR 726.  Nurse practitioner Brookes also noted that Cruz

would walk without using his cane until he noticed her watching, then he would put his

cane down and grimace.  AR 759.

**Dr. Mary Gable.**  On May 10, 2013, Dr. Gable performed a complete internal

medicine evaluation of Cruz. As relevant here, Dr. Gable opined that Cruz was limited to pushing/lifting/pulling/carrying 20 pounds occasionally and 10 pounds frequently, particularly if using his left arm, and that Cruz should "avoid frequent overhead reaching or carrying with his right arm." AR 662-63. Dr. Gable also stated that Cruz could sit six hours in an eight hour day, could do the same walking (but should only walk on uneven terrain occasionally), and could perform all postural work activities occasionally. AR 662-63.

The ALJ found that Dr. Gable's opinion was "largely consistent" with the medical record and Cruz's daily activities. AR 26. The ALJ, nevertheless, only gave the opinion "partial weight because it d[id] not adequately consider [Cruz's] subjective complaints." AR 26. Accordingly, the ALJ "further limited" Cruz's "standing and walking based on his subjective allegations of pain." AR 26.

**Dr. Robert Gardner.** On February 11, 2014, Dr. Gardner of the Lucerne Community Clinic examined Cruz and provided his medical opinion. AR 26. With respect to Cruz's mobility, Dr. Gardner stated that Cruz needed a cane to walk, and even then could walk less than one block without severe pain. Dr. Gardner further opined that Cruz could sit only 10 minutes before needing to get up, could stand only ten minutes before needing to sit down, could sit or stand/walk less than two hours total in an eight-hour working day, and could "never perform climbing or postural activities." AR 26. Dr. Gardner also opined that Cruz could lift less than ten pounds occasionally. AR 26.

The ALJ gave Dr. Gardner's opinion "little weight" because it was not "supported by the medical evidence" and because he failed to cite any objective findings as justification for his opinion. AR 26. In a conclusory fashion, the ALJ found that the opinion was inconsistent with the imaging studies, the other opinions (which, according to the ALJ, lacked disabling findings), and Cruz's relatively conservative treatment history. AR 26. The ALJ also pointed out that while Dr. Gardner is a doctor at Lucerne Community Clinic, Dr. Gardner examined Cruz only once, for the sole purpose of

1   providing the medical source statement in support of Cruz's disability claim.  AR 26.

2       Though the ALJ did not, in any reviewable way, consider the rest of Dr. Gardner's

3   medical opinion on Cruz's right shoulder, Dr. Gardner also opined that Cruz's shoulder

4   pain resulted in decreased strength and range of motion, that Cruz could only reach

5   overhead, with either arm, "occasionally," and that Cruz experienced  "significant

6   manipulative limitations."  AR 683, 686.

### ISSUES

8       While making passing reference to the other alleged errors, Cruz only argues that

9   the ALJ erred in phase four and five of her analysis.  Specifically:

10      (1)     The RFC was not supported by substantial evidence because the ALJ failed

11  to provide legally sufficient reasons for discrediting Dr. Gardner's medical opinion and

12  Cruz's testimony, the RFC understated Cruz's right shoulder and mobility limitations, and

13  the RFC failed to limit Cruz to performing one or two step instructions.

14      (2)     The ALJ erred at step five by relying on the VE's testimony that was based

15  on an incomplete hypothetical and conflicted with Cruz's RFC limitations.

### DISCUSSION

17  **A.     The Relevant AOD.**

18      Cruz argues that the relevant AOD should be October 12, 2008, rather than July 1,

19  2011.  Cruz's representative specifically amended the AOD during the administrative

20  hearing and the ALJ's decision relied on that amended AOD.  See AR 14, 42.  Cruz

21  nevertheless argues that in its subsequent denial of review, the Council did not

22  specifically reject Cruz's objection to the amended AOD.  Therefore, according to Cruz,

23  the August 12, 2008, AOD is the relevant date.  The court disagrees.

24      "The Social Security Act grants to district courts jurisdiction to review only 'final

25  decisions' of the Commissioner."  Klemm v. Astrue, 543 F.3d 1139, 1144 (9th Cir.2008).

26  A decision by the Council to deny review of the ALJ's decision "is a non-final agency

27  action not subject to judicial review because the ALJ's decision becomes the final

28

decision of the Commissioner." Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1231 (9th Cir. 2011). However, "the Commissioner's regulations permit claimants to submit new and material evidence to the Appeals Council and require the Council to consider that evidence in determining whether to review the ALJ's decision." Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1162 (9th Cir. 2012); see also 20 C.F.R. § 404.970(b).

But neither at this stage nor in his request for review, does Cruz point to new evidence submitted to the Council that would support reverting to the old AOD. Instead, Cruz's request to the Council merely asserted that the amended AOD was chosen because "it was felt that there was more compelling medical evidence" supporting the amended AOD. AR 395. That assertion alone is neither new evidence nor a basis for reviewing the ALJ's determination—the Commissioner's "final decision"—using an AOD that the ALJ never considered. Acceding to such a request would give Cruz a second bite at the apple and undermine the deferential standard of review districts courts are required to apply to the Commissioner's 'final decisions.'

Accordingly, the relevant AOD is July 1, 2011.

## B.    The ALJ's RFC Was Not Supported By Substantial Evidence

Cruz contends that the RFC failed to properly account for Cruz's right shoulder limitations, Cruz's mobility limitations, and Cruz's ability to perform only one and two-step instructions.

An ALJ's decision must be affirmed if the ALJ's findings are "supported by substantial evidence and if the [ALJ] applied the correct legal standards." Holohan, 246 F.3d at 1201 (citation omitted). " 'Substantial evidence' means 'more than a scintilla,' but 'less than a preponderance.' " Smolen, 80 F.3d at 1279 (quotations and citations omitted). The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion and may not affirm simply by isolating a specific quantum of supporting

evidence." Lingenfelter, 504 F.3d at 1035 (internal quotation marks and citations omitted).

As discussed below, the court finds that the ALJ's decision regarding Cruz's right shoulder limitations is <u>not</u> supported by substantial evidence. Cruz's other challenges to the RFC lack merit.

**1.    The RFC's Allowance For "Frequent" Right Upper Extremity Reaching Is Not Supported By Substantial Evidence.**

Cruz testified that his right shoulder impairment prevents him from moving his right arm without unbearable pain and that he cannot lift anything or carry more than ten pounds. AR 22. The ALJ determined Cruz could "reach overhead with his right upper extremity frequently, and he c[could] carry with his right upper extremity frequently." AR 21. Cruz argues that the ALJ's RFC determination contradicts the objective medical evidence, the medical opinions, and Cruz's subjective complaints. The court agrees.

**a.    Objective Medical Records**

The ALJ failed to consider all of the objective medical evidence in the record. First, while far from dispositive, the ALJ erroneously dated Cruz's July 1, 2011 MRI as occurring in June of that year. AR 22, 721. That MRI showed Cruz's shoulder had a complete tear of the spraspintaus tendon with a 13 mm gap between the tendon ends. AR 721. Notably, July 1, 2011, is also the amended AOD, which explains why Cruz thought that date presented "more compelling medical evidence." More importantly, as noted in footnote 4, the ALJ entirely ignored the September 2014 x-ray showing that 1 of the 3 screws from Cruz's rotator cuff repair had become dislodged. AR 697, 765. This is true, despite the ALJ's citation to a bullet point directly below the same diagnosis in an August 26, 2014 medical record. <u>See</u> AR 23, 697.

Other than discrediting Cruz's testimony, discussed below, the ALJ does nothing to diminish the severity of these injuries. The ALJ does not point to any objective medical evidence, or anything else, that suggests Cruz's right shoulder condition has improved

since the MRI or x-ray.

This failure alone would likely be enough for the court to find the ALJ erred in her right shoulder determination.  See 20 C.F.R. §§ 416.920(e) ("we will assess and make a finding about your" RFC "based on all the relevant medical and other evidence in your case record").  In combination with the ALJ's failure to properly grapple with the medical opinions on the same topic, a failure that is independently dispositive, the court is left with no doubt that the ALJ erred.

### b. Medical Opinions

The medical opinions also support Cruz's claim that the ALJ erred by allowing "frequent" right overhead reaching.[5]  Specifically, the ALJ (i) failed to provide any reason for rejecting Dr. Gable's right shoulder conclusion, (ii) neither provided "clear and convincing reasons" nor "specific and legitimate reasons" supported by substantial evidence for discrediting Dr. Gardner's medical opinion on the same, and (iii) misconstrued the consultative examiners' medical opinions.

### i. Dr. Gable

Dr. Gable opined that Cruz experienced "[r]ight shoulder pain . . . with ongoing problems with decreased range of motion.  It was substantially decreased on testing," AR 662, demonstrating only about 20% of a normal range of motion.  AR 660-61.[6]  Dr. Gable concluded that Cruz should "avoid frequent overhead reaching or carrying with the right arm."  AR 663 (emphasis added).

The ALJ gave Dr. Gable's opinion partial weight.  Notably, the ALJ did not discredit Dr. Gable's testimony as being too favorable to Cruz.  The ALJ instead concluded that Dr. Gable's opinion did "not adequately consider [Cruz's] subjective complaints."[7]  AR 26.

---

[5] All of the medical opinions were given prior to the September 2014 x-ray.

[6] The Commissioner argues that Dr. Gable noted Cruz's right shoulder had greater range of motion when observed functionally.  Dr. Gable ultimately opined that even this greater range of motion was less than 50% of normal and she "still could not say that [Cruz] had full range of motion."  AR 660-62.

[7] Cruz argues that this statement implies that Dr. Gable's right shoulder findings are not

1  Thus, if anything, the ALJ considered Dr. Gable's conclusions about Cruz's right shoulder

2  not sufficiently restrictive.  And, in any event, if the ALJ meant to undermine Dr. Gable's

3  opinion about Cruz's right shoulder, the ALJ's criticisms would fall far short of providing

4  specific and legitimate reasons supported by substantial evidence.  See Rollins v.

5  Massanari, 261 F.3d 853, 856 (9th Cir.2001).

6         **ii.**   **Dr. Gardner**

7       The ALJ also did not provide "clear and convincing reasons" or even "specific and

8  legitimate reasons" supported by substantial evidence for discrediting Dr. Gardner's

9  medical opinion on Cruz's right shoulder impairment.

10       With respect to Cruz's right shoulder, Gardner's opinion generally accords with Dr.

11  Gable's opinion.  Dr. Gardner opined that Cruz could rarely carry ten pounds and

12  occasionally carry less than 10 pounds.  AR 686.  Dr. Gardner further opined, and the

13  ALJ ignored, that Cruz could only "occasionally" reach overhead with his right arm during

14  an eight-hour work day.  AR 686.

15       Without making findings specific to each impairment, the ALJ gave Dr. Gardner's

16  entire medical opinion "little weight."  AR. 27.  The ALJ stated that Dr. Gardner's opinion

17  was "not supported by the medical evidence" and that it failed to "cite[ ] [ ] objective

18  findings as justification for [his medical] opinion."  AR 26-27.  Without providing any

19  specifics, the ALJ found that the opinion was inconsistent with the "imaging studies" and

20  the "physical examination findings" because those "lacked disabling findings."  AR 27.

21       These criticisms fail with respect to Dr. Gardner's opinion about Cruz's right

22  shoulder.  First, as noted, the ALJ ignored Dr. Gardner's conclusion that Cruz was limited

23  to "occasional" right overhead reaching.  AR 686.  An ALJ cannot avoid the requirement

24  of giving legally sufficient reasons for discrediting a medical opinion "simply by not

25  

---

26  sufficiently restrictive.  In the next sentence the ALJ "further limited [Cruz's] standing and
walking based on his subjective allegations of pain."  AR 26.  This strongly implies that

27  the ALJ only intended to further limit Cruz's mobility-related impairments.  As discussed
below, the ALJ did place additional limitations on Cruz's mobility.

28

mentioning the treating physician's opinion and making findings contrary to it."
Lingenfelter, 504 F.3d at 1038 n. 10.

Second, the ALJ's criticisms are far too vague to meet the Ninth Circuit's requirement of providing specific and legitimate reasons supported by substantial evidence. The ALJ does not explain what part of Dr. Gardner's opinion was inconsistent with the medical evidence, the imaging studies, or the physical examination findings. For good reason: The ALJ's criticisms are contradicted by the record. Dr. Gardner's opinion on Cruz's right shoulder appears entirely consistent with the impairments shown in the 2011 MRI and the 2014 x-ray and the lack of any evidence showing Cruz is recovering from those injuries. Further, Dr. Gardner's "occasional" overhead reaching conclusion accords with Dr. Gable's and, as discussed below, Dr. Sheehy's conclusion on the topic.

### iii.    Consultative Examiners

The ALJ also erred by ignoring relevant parts of and misconstruing the consultative examiners' medical opinions. The ALJ stated that Dr. Sheehy, the initial level state agency medical consultant, opined Cruz could lift 10 pounds "frequently," implying that was the entirety of Dr. Sheehy's opinion on the issue. AR 26. And that Dr. Nordlicht, the reconsideration level medical consultant, "agreed entirely with" that opinion. AR 26. Both of these findings are contradicted by the face of the doctors' respective opinions.

Dr. Sheehy did state that Cruz could "frequently" lift or carry 10 pounds. AR 79. However, Dr. Sheehy also stated that Cruz's right overhead reaching was "limited" and Cruz should "<u>avoid</u> freq overhead reaching w/RUE" (right upper extremity). AR 80 (emphasis added). This opinion is entirely consistent with both Dr. Gable's and Dr. Gardner's medical opinions.

Further, Dr. Nordlicht did not "agree[] entirely with" Dr. Sheehy's medical opinion. Dr. Nordlicht disagreed on this very issue. While Dr. Nordlicht concurred that Cruz could carry 10 pounds "frequently" and right overhead reaching was "limited," Dr. Nordlicht

concluded that Cruz's right overhead reaching need only be limited to "frequent."  AR 137-38.  The ALJ ignored this part of Dr. Nordlicht's opinion, which is in fact the only medical opinion that supports the ALJ's conclusion on this issue.

Regardless, Dr. Nordlicht's nonexamining opinion alone would not "constitute substantial evidence that justifies the rejection of the" examining physicians' opinions discussed above.  Revels, 874 F.3d at 655, 664.  Further, even if the court found Dr. Nordlicht's opinion significant or to constitute substantial evidence, a reviewing court "may not affirm the ALJ on a ground upon which [s]he did not rely."  Id. at 654.

### c.    Cruz's Testimony

Despite the above, the Commissioner argues that the ALJ's determination should be affirmed because the ALJ properly discredited Cruz's testimony about his symptoms.

The court agrees that it appears that the ALJ's right overhead reaching determination is largely based on her belief that Cruz's disability claims are incredible.  The court also agrees, as discussed below, that the court provided clear and convincing reasons for discrediting Cruz's testimony based on evidence that Cruz exaggerated his symptoms to obtain favorable diagnosis from his medical professionals.  The court, however, disagrees that discrediting Cruz's testimony constitutes substantial evidence supporting the ALJ's right shoulder determination.

An ALJ may not substitute her opinion for that of a medical doctor.  See Walston v. Astrue, No. 11-CV-145, 2012 WL 5258784, at *7 (E.D. Wash. Oct. 24, 2012) (compiling cases).  The medical professionals were nearly unanimous:[8]  Cruz should, at the very least, "avoid frequent" right overhead reaching.  The ALJ has not pointed to any conflicting objective medical records or medical testimony supporting her alternative conclusion.  Nor has the ALJ explained how the medical opinions are inconsistent with the objective medical records, including the July 1, 2011 MRI and the September 26, 2014 x-ray.  Cruz's lack of credibility hardly equates to substantial evidence when

---

[8] As discussed, Dr. Nordlicht is the outlier and this court cannot rely on that opinion.

balanced against <u>all of the other medical evidence</u>.  See <u>Lingenfelter</u>, 504 F.3d at 1035 (courts "must consider the entire record as a whole . . . and may not affirm simply by isolating a specific quantum of supporting evidence" (internal quotation marks and citations omitted)).

### d.    Right Overhead Reaching Conclusion

There is ample evidence in the record showing Cruz cannot reach overhead with his right arm more than "occasionally."  In contrast, there is little to no evidence that Cruz can engage in right overhead reaching "frequently."  The RFC is therefore defective because it is not supported by substantial evidence and "fails to take into account a claimant's limitation."  <u>Valentine</u>, 574 F.3d at 690.  The court hereby REVERSES the Commissioner's final decision and REMANDS this matter for further administrative proceedings.  <u>See Treichler v. Comm'r of Soc. Sec. Admin.</u>, 775 F.3d 1090, 1101 (9th Cir. 2014) (explaining remand is appropriate to resolve conflicts, ambiguities, and other factual issues).

### 2.    The RFC's Mobility-Related Limitations Are Supported By Substantial Evidence.

Based on the "totality of the evidence," the ALJ found Cruz could occasionally stoop/kneel/crouch/crawl, could walk on uneven terrain and ambulate for prolonged periods with a cane, could stand/walk for 4 hours in an 8-hour day, and needed to alternate positions approximately every 30 minutes.  AR 21, 25.

Cruz contends that this part of the RFC understates his mobility limitations because his various impairments generate disabling symptoms.  Specifically, Cruz argues that the ALJ erred by (i) improperly evaluating the severity of Cruz's hamstring, hip and lower back impairments; (ii) understating related walking limitations, and (iii) failing to consider these impairments in conjunction with Cruz's obesity.

The court disagrees and affirms the ALJ's mobility-related determination.

### a. Objective Medical Record

**Cruz's Hamstring and Back**. Cruz argues that the "ALJ unduly focused on [ ] Cruz's hamstring issues, failing to consider it in combination with issues related to back pain." Pl. Br. 10. This argument contradicts the face of the ALJ's decision.

The ALJ's own analysis begins: "[w]ith respect to claimant's lower back and left hamstring conditions." AR 23. It then goes on to discuss Cruz's lower back impairments in <u>more</u> detail than the hamstring impairment. <u>See</u> AR 23-24. The ALJ concluded that the objective medical evidence supported impairment in Cruz's left hamstring and lower back but also that Cruz likely overstated the severity of his symptoms. AR 23. Cruz points to no medical evidence concerning his lower back that the ALJ failed to consider and the court finds that the medical evidence described above supports the ALJ's conclusion.

Cruz's argument regarding the ALJ's left hamstring analysis fares no better. The medical records show that Cruz complained of left hamstring pain on many occasions and that he has sciatica in his left leg. AR 654, 740. However, the only cited left hamstring injury was caused by the 2002 work-related accident. AR 465. In 2013, Dr. Gable opined that this injury should have already resolved itself. <u>See</u> AR 662. Again, Cruz does not explain how the ALJ erred in considering this evidence. Other than pointing to 2002 and 2004 records showing he was referred to physical therapy and continuing complaints of left hamstring pain (AR 463-465, 469, 491), Cruz does not point to any other medical evidence related to his hamstring that the ALJ failed to discuss. The 2002 and 2004 records by themselves are of "limited relevance," <u>see Carmickle v. Comm'r, Soc. Sec.</u>, 533 F.3d 1155, 1165 (9th Cir. 2008), and in fact <u>confirm</u> the hamstring injury was likely a strain, <u>see</u> AR 463, 464, and that even if it was a tear it would have "resolve[d] in a matter of months, not years." AR 465.

Cruz next argues that his upper spinal impairments are not subject to reasonable dispute based on a September 2013 MRI. The ALJ considered the very same evidence,

finding "the medical record is significant for complaints of neck pain, and an MRI performed September 6, 2013 revealed multilevel DDD, and narrowing of the canal C4 to C6-C7" and that there was a disc bulge at C5-C6.  AR 23.  The ALJ, however, also noted that a May 2013 physical consultative exam concluded that Cruz's neck flexion, lateral bending, and rotation were all within normal limits and that there was no evidence of weakness in Cruz's upper extremities.  AR 23, 660-61.  Cruz fails to point to any evidence the ALJ failed to consider or explain how the ALJ's conclusion is not supported by substantial evidence.

Fundamentally, Cruz has opted to reiterate records that the ALJ already considered without making any effort to explain how the ALJ failed to properly account for those records.  This approach does not satisfy Cruz's burden on appeal.  Schwab v. Colvin, No. CV-15-01081, 2016 WL 4168761, at *7 (D. Ariz. Aug. 8, 2016) ("Plaintiff's argument that the Court re-weigh the evidence the ALJ cited to is insufficient to establish harmful error . . ."); see also Shaibi v. Berryhill, 870 F.3d 874, 882 (9th Cir. 2017).

**Cruz's Hip.**  Cruz next argues that deformities in his spinal and pelvic orientations and associated limits in strength and mobility remained evident through 2013.  Specifically, Cruz points to a January 18, 2013 physical therapy note indicating that Cruz had "pelvic obliquity," limited hip flexibility, difficulty with pelvic tilt, and hip tightness.  AR 654.

As with Cruz's back and hamstring argument, the ALJ considered and cited that very page, stating Cruz "experienced limited hip flexibility and tightness, and pelvic obliquity."  AR 23.  The ALJ, however, noted that the same page indicated Cruz's "hip tightness [was] normalizing."  AR 23, 654.  The ALJ also considered a July 2013 imagining study that came back normal, AR 674, and a May 10, 2013 report indicating Cruz's left hip strength was 4+/5, AR 661.

Again, other than directing the court to records the ALJ already considered, Cruz does not attempt to explain how the ALJ erred.

**Obesity.**  Cruz next complains that the ALJ failed to properly evaluate his obesity because the ALJ focused on its effect on Cruz's lower back but failed to consider its effect on his hamstring and hip issues and its effect on Cruz's mobility.  Cruz's argument is contradicted by the ALJ's decision.

The ALJ considered the effect of Cruz's obesity on each of Cruz's impairments.  The SSA's policy interpretation for the evaluation of obesity states:  "When we identify obesity as a medically determinable impairment . . .  we will consider any functional limitations resulting from the obesity in the RFC assessment, in addition to any limitations resulting from any other physical or mental impairments that we identify."  Social Security Ruling 02-1p, available at Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity, 67 Fed.Reg. 57,859–02 (Sept. 12, 2002); S.S.R. 96–7p (Cum. Ed.1996), available at 61 Fed.Reg. 34,483–01 (July 2, 1996).

That is exactly what the ALJ did here.  The ALJ determined at step three that Cruz's obesity was a "severe" impairment.  AR 17.  The ALJ then "considered and incorporated" Cruz's obesity into the entirety of the ALJ's step three evaluation.  AR 20.  Finally, while the ALJ did state obesity was "most notably potentially related to [Cruz]'s lower back concerns," she also "considered [its] potentially augmentative effects" on all of Cruz's impairments.  AR 25.  This is all the law requires.  Burch, 400 F.3d at 683 ("[T]he ALJ did not err in step five of the analysis as he considered [claimant's] obesity in making his determinations regarding RFC and vocational ability.")

Cruz also argues that by focusing on Cruz's back, the ALJ failed to properly evaluate Cruz's obesity on his ability to ambulate.  To support this contention, Cruz points only to his own hearing testimony where he claims his back issues are related to his obesity.  See Dkt. 17 at 9; AR 48.  The testimony says nothing about whether Cruz's obesity is aggravating any of his other injuries or his ability to ambulate.  See Burch, 400 F.3d at 684 ("[T]he ALJ adequately considered Burch's obesity in his RFC determination.  Burch has not set forth, and there is no evidence in the record, of any functional

limitations as a result of her obesity that the ALJ failed to consider.").

### b.     Cruz's Testimony

Once a claimant has shown the existence of an underlying impairment, the ALJ may not reject symptom testimony simply because it is not fully consistent with the objective medical evidence. <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 345-46 (9th Cir. 1991). Instead, absent affirmative evidence of malingering, the ALJ can reject a claimant's testimony about the severity of his symptoms only by offering clear and convincing reasons for doing so. <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998). Cruz contends that the ALJ failed to meet this standard.

The ALJ did not make any specific findings of malingering, but found Cruz's testimony "not entirely credible" based on his activities of daily living and his attempts to "coerce" medical providers into providing diagnoses favorable to a "disabled" determination. AR 22. Cruz argues that the ALJ erred in relying on these two basis for discrediting Cruz's testimony.

The court finds that the ALJ erred with respect to her reliance on Cruz's activities of daily life. But finds this error harmless because there is substantial evidence supporting the ALJ's decision to discredit Cruz's testimony based on his exaggeration of his symptoms. <u>See Molina v. Astrue</u>, 674 F.3d 1104, 1115 (9th Cir. 2012).

### i.     Daily Activities

The ALJ first discounted Cruz's credibility because although Cruz alleged disabling physical and mental symptoms, "his activities of daily living evidence a good deal of remaining function." AR 22. As discussed above, Cruz testified that he did his own shopping, cooking and some chores, AR 22, and Dr. Kalman concurred that Cruz could manage his own transportation, care for his own personal hygiene, and was able to pay his own bills, AR 22, 667.

The Ninth Circuit has repeatedly stated that "the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from [a claimant's]

credibility as to [his or] her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001). Accordingly, to base an adverse evaluation on the claimant's activities of daily living, the ALJ must either explain how the claimant's activities are inconsistent with his or her testimony or how the activities of daily living meet the threshold for transferable work skills. See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007). Further, where the ALJ looks to daily activities to discredit pain testimony, the Ninth Circuit has instructed that "ALJs must be especially cautious . . . because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Garrison v. Colvin, 759 F.3d 995, 1016 (9th Cir. 2014).

The ALJ failed to meet this standard because she did not consider the full context of the reported activities of daily life. In Reddick v. Chater, 157 F.3d 715, 722-723, 723 n.1 (9th Cir. 1998), the Ninth Circuit reversed because the lower court (and the ALJ) failed to "fully account[ ] for the context of materials or all parts of the testimony," including that the claimant performed daily activities with help, in pain, and required periodic rest. The ALJ committed the same error here. The ALJ ignored accompanying testimony showing that due to Cruz's pain and fatigue, he could perform activities of daily life only with significant effort, assistance, or frequent breaks. See AR 271 ("try to do laundry sometimes if pain isn't so bad at the time"), AR 354 (daily activities "take me longer to do when I am in pain … my son helps me with household chores"), AR 382 ("just standing trying to do dishes hurts my back within the first 5 minutes"). Cruz's roommate's testimony confirms the same. AR 342 ("his ability to perform small tasks … seems very painful"), AR 344 (testifying that Cruz prepares food daily but with difficulty), AR 344 (roommate helps Cruz shop for groceries).

The ALJ has done nothing to explain how Cruz's daily activities (with these difficulties included) are inconsistent with the alleged severity of Cruz's symptoms or how

the activities would translate to a job setting. See Revels, 874 F.3d at 664 (reversing lower court partly because the ALJ failed to consider context of daily activities, including "struggl[ing] to complete household tasks" and needing "numerous breaks").[9]

Although ultimately harmless, the court finds the ALJ erred in discrediting Cruz's testimony based on Cruz's activities of daily living.

### ii.    Exaggeration/Coercion.

Cruz next argues that the ALJ "failed to offer 'specific, clear and convincing reasons' for finding [ ] Cruz not credible" because the ALJ failed to "identify what testimony was not credible and what evidence undermined Mr. Cruz's complaints." Dkt. 17 at 13. Contrary to Cruz's argument, the ALJ identified the following evidence that "suggest[ed] attempts to coerce physicians into favorable diagnoses." AR 22:

- General Credibility:  Nurse practitioner Brookes stated "pt attempts to intimidate at every opportunity.  He often mentions his lawyer and all that is owed to him and how he has been treated poorly."  AR 22.
- General Credibility:  The ALJ observed Cruz "wearing a sling to support his right arm, while simultaneously gesturing with both arms and moving about excitedly."  AR 22.
- Shoulder Pain:  Dr. Gable stated that the claimant says that "he can barely do anything with this right shoulder . . . Yet, he seems to demonstrate better range of motion when he is not being tested."  AR 23.

Albeit not specifically relied on by the ALJ, and the court does not rely on it here, the record contains other indications that Cruz exaggerates his impairments. For example, when Cruz switched doctors to Lucerne Community Clinic in December 2013, nurse practitioner Brookes wrote that Cruz was "now changing to us to get help to get on ss Disability." AR 726. Brookes also noted that Cruz would walk without using his cane until he noticed Brookes watching, then he would put his cane down and grimace. AR 759.

Importantly, the ALJ did not entirely discount Cruz's testimony, instead the ALJ

---

[9] The ALJ's rejection of Cruz's roommate testimony fails for the same reasons. Revels, 874 F.3d at 668 (the failure to consider context is also fatal to an ALJ providing " 'germane reasons' for rejecting third-party function reports").

determined it was "not entirely credible."[10]  The court finds that the incidences the ALJ

identified constitute "specific, clear and convincing" reasons for this finding.  Because this

alternative basis supports the ALJ's determination, the court holds the ALJ's err regarding

Cruz's activities of daily living was harmless.

### c.    Dr. Gardner's Medical Opinion

Cruz next argues that the ALJ improperly discredited Dr. Gardner's medical

opinion on Cruz's mobility.

Dr. Gardner's medical opinion was the only opinion that concluded Cruz's mobility

limitations were more severe than the ALJ's findings.  <u>Compare</u> AR 26-27 <u>with</u> AR 21.

The court finds that the ALJ's determination is supported by specific, legitimate

reasons based on substantial evidence.  <u>Valentine</u>, 574 F.3d at 692.[11]  As discussed

above, the ALJ gave Dr. Gardner's opinion "little weight" because it was inconsistent with

the objective medical evidence.  This criticism rings true with regards to Dr. Gardner's

mobility-related opinions because the objective medical evidence does not show Cruz

had any severe mobility impairments and also suggested Cruz mobility-related injuries

were improving.  AR 27.  Dr. Gardner's opinion also conflicted with Cruz's relatively

conservative treatment regime.  AR 27.

Similarly, other than with respect to Cruz's right shoulder, Dr. Gardner's opinion

conflicted with the other medical opinions.  Dr. Gardner's opinion that Cruz could

sit/stand/walk for less than two hours in an eight-hour working day conflicts with both Dr.

Gable's opinion and the medical consultants' opinions (all of whom opined that Cruz

could do those activities for 6 hours in an 8-hour work day).  <u>Compare</u> AR  685 <u>with</u> AR

79, 152, 662.  And Dr. Gardner's opinion that Cruz could never perform postural activities

---

[10] The ALJ did not provide a specific "weighting" of Cruz's testimony.

[11] While both parties make passing reference to whether Dr. Gardner was Cruz's "treating physician," it is ultimately a non-issue.  When contradicted, the distinction between a treating or examining professional's opinion falls away because the same standard applies.  <u>Revels</u>, 874 F.3d at 654-55; <u>see also Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996).

is contradicted by Dr. Gable's and the medical consultants' opinions that Cruz could "occasionally" perform postural activities.  Compare AR 686 with AR 80, 137, 663.

Faced with this conflicting medical testimony, the ALJ was both entitled to and required to determine which opinions she found more believable.  See Batson, 359 F.3d at 1195.  As Cruz has pointed to no overlooked evidence or anything else, the court finds that the ALJ has provided specific, legitimate reasons based on substantial evidence to support her determination that Dr. Gardner's mobility-related opinions should be afforded "little weight."  See Revels, 874 F.3d at 654-55.[12]

### d.    Mobility Conclusion

The ALJ did exactly what was required.  She "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence, stat[ed] [her] interpretation thereof, and ma[de] findings."  Revels, 874 F.3d at 654-55.  The court finds that the ALJ's mobility findings are supported by substantial evidence and "supported by inferences reasonably drawn from the record."  See Tommasetti, 533 F.3d at 1038.

### 3.    The ALJ Did Not Err By Failing To Include A Limitation That Cruz Could Only Perform One and Two-Step Instructions.

Cruz next argues that the RFC was incomplete because it failed to account for Dr. Kalman's opinion that Cruz could "understand, remember, and carry out simple one and two-step job instructions."  AR 668.

Nothing about this part of Dr. Kalman's opinion suggests it was meant as a limitation, as opposed to a general capability.  AR 666.  In the same section, Dr. Kalman distinguishes between limitations and general capabilities: Cruz "is able to understand, remember and carry out simple one and two-step job instructions" but "has decreased ability to interact with supervisors and co-workers."  AR 668 (emphasis added) (also

---

[12] Cruz also contends that the ALJ "failed to build a bridge" explaining the RFC limitations.  Cruz cites no case law shedding light on what building a bridge might entail. The ALJ discussed the evidence, considered the medical opinions, and rendered an RFC that largely matched the medical opinions.  The court finds this process sufficient.

United States District Court
Northern District of California

finding Cruz had a "decreased ability to deal with public" but was "able to maintain attention").

Cruz has provided no evidence that Dr. Kalman's "one and two-step instruction" conclusion was intended to be a limitation. And the ALJ is not required to list every capability a medical professional finds. Accordingly, the court cannot find that Cruz's RFC was incomplete for this reason.

## C.     The ALJ's Reliance on the Vocational Expert

Cruz next challenges the ALJ's reliance on the VE's testimony on three grounds: (i) the VE's testimony was based on incomplete hypotheticals; (ii) the VE, according to Cruz, testified Cruz could only perform "sedentary work"; and (iii) the RFC conflicts with the two jobs the VE testified Cruz could perform. The court finds that each of these arguments lacks merit.

### 1.     The ALJ's Questioning of the Vocational Expert Was Incomplete.

At the administrative hearing, the ALJ questioned a vocational expert about the availability of jobs for three hypothetical persons with varying symptoms and impairments. AR 64-68. Of the three hypothetical persons, the ALJ's final determination relied on the second hypothetical, which matched the ALJ's final RFC determination. AR 29-30. The VE testified that the second hypothetical person could perform the work of either a bench assembler (DOT Code 706.684-022) or mail clerk (DOT Code 209.687-026). AR 66.

Cruz contends that the second hypothetical was deficient because it understated Cruz's right overhead reaching and mobility limitations, his pain and fatigue related limitations, and his mental limitations. Each of these contentions are addressed above.

### 2.     Cruz Had The RFC To Perform "Light Work" With Additional Limitations, Not "Sedentary work."

Cruz next argues that the ALJ failed to credit the VE testimony that no jobs existed at the sedentary level when discussing the third hypothetical person. This argument

29

stems from a misunderstanding of the hearing testimony. The VE did not testify, as Cruz argues, that 4 hours of standing/walking in an 8 hour day would result in a "sedentary" finding. Instead, the VE testified that the combination of that walking limitation and being unable to lift more than ten pounds would reduce the hypothetical person to "sedentary." AR 68.

But Cruz's RFC did not include this combination of impairments. Instead, the RFC limited Cruz to "light work," which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 CFR § 404.1567 (defining "light work"). The ALJ had no need to consider what jobs were available at the sedentary level because the physical exertion requirements at that level did not apply to Cruz.

Cruz's other argument is spurious. Cruz argues that "light work" requires "frequent lifting or carrying" which in turn requires "being on one's feet up to two-thirds of a workday." See Dkt. 17 at 15 n. 15; SSR 83-10, 1983-1991 Soc. Sec. Rep. Serv. 24, available at 1983 WL 31251, at *5. This requirement, according to Cruz, conflicts with the RFC limiting Cruz to 4 hours of walking/standing in an 8-hour day.

This argument is premised on the ALJ concluding that Cruz could perform the "full range of light work," which would require being on one's feet two-thirds of a work day. SSR 83-10, available at 1983 WL 31251, *5. But the ALJ did not conclude that Cruz could perform the "full range of light work." Id. at *6. Instead, the ALJ concluded that Cruz could perform light work with additional limitations, including walking/standing 4 hours in an eight-hour day.

That is all that is required: In "[r]esponding to the ALJ's hypothetical question that specifically accounted for [Cruz's] limitations, the expert eliminated all jobs" that were incompatible with the hypothetical, including Cruz's mobility limitations, and identified two "job[s] [Cruz] could perform despite h[is] limitations. Gutierrez v. Colvin, 844 F.3d 804, 809 (9th Cir. 2016). "The ALJ was entitled to rely on the expert's experience in job

placement to account for a particular job's requirements and correctly did so here." Id. (internal citations and quotation marks omitted).

### 3. There Were No Apparent Or Obvious Conflicts Between the RFC and The Two Jobs The VE Testified Cruz Could Perform.

Lastly, Cruz argues that the ALJ failed to reconcile apparent conflicts between the "mail clerk" and "bench assembler" job descriptions and Cruz's RFC. While this contention was not previously raised, Ninth Circuit law is clear:

> [C]ounsel's failure [to raise the issue] does not relieve the ALJ of his express duty to reconcile apparent conflicts through questioning: When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency.

Lamear v. Berryhill, 865 F.3d 1201, 1206 (9th Cir. 2017) (internal quotation marks omitted). To do so, the ALJ must ask the expert to explain the conflict and "then determine whether the vocational expert's explanation for the conflict is reasonable before relying on the expert's testimony to reach a disability determination." Zavalin, 778 F.3d at 846; accord SSR 00-4P, available at 2000 WL 1898704, at *2 ("If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.").

Cruz first contends that the ALJ failed to reconcile the conflict between the requirement that a bench assembler work as a member of a group and Cruz's ability to "occasionally" interact with supervisors, coworkers, and the public.

The court finds no "obvious or apparent" conflict between the "occasional" interaction limitation and the bench assembler DOT description. See Gutierrez, 844 F.3d at 808. The DOT description states: "Frequently works at bench as member of assembly group assembling one or two specific parts and passing unit to another worker." DOT Code 706.684-022. While the ALJ did not specify the type of interaction the RFC limits,

1    the limitation was based on Cruz's "moderate impairment in social functioning."  AR 25.

2    Accordingly, it is reasonable to infer Cruz is limited to "occasionally" speaking to and

3    otherwise socially interacting with his coworkers.  "[P]assing unit[s] to another worker"

4    does not present an obvious or apparent conflict with that limitation.

5         Cruz next argues that the "mail clerk" position requires standing/walking 6 hours in

6    an 8 hour day and this conflicts with the RFC limiting Cruz to only 4 hours stand/walk.

7         This argument does not persuade the court.  The VE testified that the "mail clerk"

8    position requires "no prolonged ambulation . . . [T]here could be ambulation [ ] for short

9    distances for a few minutes at a time.  When ambulating [ ] longer distances, instead of a

10   cane they have a cart on wheels that you can hold onto so that takes place of the cane."

11   AR 67.  Further, contrary to Cruz's assertion, the mail clerk DOT description does not

12   state that the "mail clerk" position requires a person to stand/walk 6 hours in an eight

13   hour day.  See DOT Code 209.687-026.  And Cruz cites no other support for his

14   assertion.  Lastly, while the "mail clerk" position does require "light work," if that is all Cruz

15   is relying on, then, as discussed above, the argument fails.

16        **4.    The ALJ's Determination Cannot Be Upheld By Limiting Cruz to
17              "Occasional" Right Overhead Reaching.**

18        Rightly sensing weakness in the ALJ's right shoulder determination, the

19   Commissioner argues that the "mail clerk" position does not require Cruz to engage in

20   frequent overhead reaching with his right arm.  Instead, as the VE testified, the mail clerk

21   position requires frequent overhead reaching but the DOT description does not

22   differentiate between bilateral and unilateral reaching.  AR 66-67.  Relying on Gutierrez v.

23   Colvin, 844 F.3d 804 (9th Cir. 2017), the Commissioner argues that even if the RFC

24   limited Cruz to, for example, "occasional" right overhead reaching, Cruz could still reach

25   frequently overhead with his left arm.

26        In Gutierrez, the ALJ determined that the claimant could not lift more than five

27   pounds with her right arm or lift that arm above her shoulder.  Gutierrez, 844 F.3d at 807.

28

                                          32

The VE testified that the claimant could perform the "cashier" position and that his opinion was consistent with the DOT description, which stated that the position required "frequent" reaching but did not specify direction or arm.  Id.  The Ninth Circuit held that the ALJ did not err because, it is "unlikely and unforeseeable" that a cashier would need to reach overhead, and even more uncommon for one to need to reach overhead with both arms.  Id. at 808-09 & 809 n.2.

The Ninth Circuit in Lamear v. Berryhill, 865 F.3d 1201, 1204 (9th Cir. 2017), addressed the same question with respect to a mail clerk position.  There, the ALJ determined that the claimant could "occasionally . . . reach overhead with his left upper extremity, and handle finger and feel with the left hand."  Lamear, 865 F.3d at 1204.  The VE testified that despite this limitation the claimant could work as an office helper, mail clerk, or parking lot cashier, even though the DOT description of those jobs require "frequent" handling, fingering, and reaching.  Id. at 1203.  The district court denied claimant's appeal.

Distinguishing Gutierrez, the Ninth Circuit in Lamear reversed.  Id. at 1207.  The Ninth Circuit stated that, "the requirement for an ALJ to ask follow up questions is fact-dependent, and the more obscure the job, the less likely common experience will dictate the result . . . [A]n ALJ should ordinarily ask the VE to explain in some detail why there is no conflict between the DOT and the applicant's RFC."  Id. at 1205 (internal quotation marks and citations omitted).  The court held that "absent anything in the record to explain" the discrepancy between the DOT descriptions requiring "frequent" handling, fingering, and reaching and the claimant's "occasional" limitation, the court "must reverse and remand so the ALJ can ask the VE to reconcile these jobs with [the claimant's] left hand limitation."  Id. at 1205-06.

The court finds that Lamear's holding directly addressing the "mail clerk" position is applicable and binding here.  Thus, the Commissioner's argument relying on Gutierrez must be rejected.

**CONCLUSION**

For the reasons discussed above, plaintiff's motion for summary judgment is GRANTED and defendant's motion for summary judgment is DENIED. The Commissioner's decision is vacated and this matter is REMANDED for further proceedings consistent with this opinion.

Cruz's request for attorney's fees under 42 U.S.C. § 406(b)(1)(A) is DENIED without prejudice as it was insufficiently briefed and because no part of Cruz's benefits, if any, have yet been determined.

This order fully adjudicates the motions listed at numbers seventeen and twenty-two of the clerk's docket for this case. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: December 18, 2017

_____
PHYLLIS J. HAMILTON
United States District Judge